UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JERARD HAMPTON,

    Petitioner,

    v.                         Case No. 19-CV-1145

SUE DEHAAN,

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Jerard Hampton, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Hampton alleges that his conviction for manufacture or delivery of cocaine, possession with intent to deliver heroin, and being a felon in possession of a firearm is unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Hampton was charged in Douglas County Circuit Court with eight criminal counts, all as a repeater: (1) delivering one gram or less of cocaine; (2) possession with intent to deliver more than forty grams of cocaine; (3) possession with intent to deliver between ten and fifty grams of heroin; (4) possession with intent to deliver a prescription drug; (5) possession of tetrahydrocannabinols, as a second or subsequent offense; (6) possession of a firearm by a felon; (7) conspiracy to manufacture or deliver more than forty grams of cocaine; and (8) conspiracy to commit possession with intent to deliver between ten and fifty grams of heroin. (*State v. Hampton*, Appeal No. 2017AP300 (Wis. Ct. App. July 24,

2018) at ¶ 4, Answer, Ex. 4, Docket # 11-4.) In June 2014, the parties entered into a plea agreement. (*Id.* ¶ 5.) In exchange for Hampton's no-contest pleas to delivering one gram or less of cocaine, possession with intent to deliver ten to fifty grams of heroin, and possession of a firearm by a felon, the State agreed to dismiss the remaining five counts, as well as the repeater enhancers. (*Id.*) The parties jointly recommended that Hampton be sentenced to five years of initial confinement and five years of extended supervision on each count, to run concurrently. (*Id.* ¶ 5.)

Approximately two months after Hampton entered his no-contest pleas, he filed a pre-sentence motion for plea withdrawal. (*Id.* ¶ 6.) Hampton argued that he was innocent of the heroin and firearm counts and that he did not fully understand the consequences of his no-contest pleas. (*Id.*) As evidence of his claimed innocence, Hampton pointed to a recently discovered police report memorializing a January 2013 police interview of his brother, Michael Hawkins. (*Id.*) Specifically, Hampton points to the section in the report in which Hawkins stated that Hampton had nothing to do with the process of packaging the heroin for re-sale:

> I asked about the "bagging" process at the house. When law enforcement executed the warrant at 621 Roosevelt Ave, the heroin was lying on the counter. There were larger chunks of heroin and many, many smaller packaging. There was a digital scale present as well. Hawkins said he was in the process of packaging the heroin for re-sale. He told me Hampton had nothing to do with this process.

(Ex. 5 to Habeas Petition, Docket # 1-1.) After conducting a hearing in which Hampton testified, the trial court denied Hampton's motion, finding incredible Hampton's testimony regarding his innocence and concluding that Hampton had not established a fair and just reason for plea withdrawal. (*Hampton*, Appeal No. 2017AP300, at ¶ 7.)

Of the maximum possible forty-five year sentence Hampton faced, the trial judge ultimately sentenced Hampton to five years of initial confinement and five years of extended supervision on each count, but ordered the sentences to run consecutively, rather than concurrently as had been jointly recommended pursuant to the plea agreement. (*Id.* ¶¶ 5, 8.) Hampton filed a post-conviction motion for plea withdrawal and for reconsideration of the sentence, which the trial court denied after a hearing. (*Id.* ¶ 8.)

Hampton appealed the trial court's decision, and the court of appeals affirmed Hampton's judgment of conviction. (*Id.* ¶ 2.) The Wisconsin Supreme Court denied Hampton's petition for review. (Answer, Ex. 7, Docket # 11-7.) Hampton timely filed a petition for writ of habeas corpus in this Court on August 7, 2019. (Docket # 1.)

## STANDARD OF REVIEW

Hampton's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

3

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Hampton raises three grounds for relief in his habeas corpus petition: prosecutorial misconduct, excessive sentencing, and plea withdrawal. (Docket # 1 at 6–9.) However, the

4

crux of Hampton's argument for prosecutorial misconduct and plea withdrawal, and the argument he raised before the Wisconsin Court of Appeals on these matters, was that Hampton should be allowed to withdraw his plea because the State failed to disclose exculpatory evidence (i.e., the police report of Hawkins' interview) as required by *Brady v. Maryland*, 373 U.S. 83 (1963). (Docket # 11-4 at ¶¶ 9–17.) Hampton further argues that the sentence imposed was excessive and that the trial judge erroneously exercised his discretion. (*Id.* at ¶¶ 18–25.) I will address each argument in turn.

1. *Alleged Brady Violation*

Hampton argues that his due process rights were violated when the State failed to disclose the police report, and accompanying video, of Hawkins' interview with law enforcement until after Hampton entered his no-contest plea. Hampton argues that had he known about Hawkins' interview, he would not have pled no-contest to the heroin count.

As an initial matter, it is not clear that Hampton's alleged *Brady* violation is a cognizable ground for habeas relief. Again, Hampton did not proceed to trial, but entered a no-contest plea. Generally, a knowing and voluntary plea bars any later challenge to alleged constitutional violations that occurred prior to the plea; the rationale being that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollet v. Henderson*, 411 U.S. 258, 265–67 (1970). The Seventh Circuit has questioned, however, whether "a criminal defendant's guilty plea can ever be 'voluntary' when the government possesses evidence that would exonerate the defendant of any criminal wrongdoing but fails to disclose such evidence during plea negotiations or before the entry of the plea." *McCann v. Mangialardi*, 337 F.3d 782, 787 (7th Cir. 2003). The *McCann* court noted that while the Supreme Court has yet to address whether the due process clause

5

requires *Brady* disclosures outside the context of a trial, the Court's decision in *United States v. Ruiz*, 536 U.S. 622 (2002) "strongly suggests that a *Brady*-type disclosure might be required" when the government possesses evidence that would exonerate the defendant of any criminal wrongdoing but fails to disclose such evidence during plea negotiations or before the entry of the plea. *McCann*, 337 F.3d at 787–88. *See also Shuttlesworth v. Richardson*, No. 14-CV-567, 2016 WL 6651412, at *4 (W.D. Wis. Nov. 10, 2016) ("It is uncertain whether *Brady* applies outside the trial context."); *United States v. Knox*, No. 89 CR 908-24, 1995 WL 443968, at *1 (N.D. Ill. July 25, 1995) ("We initially observe that it is not entirely clear that a *Brady* violation can serve as the basis for a collateral attack on a guilty plea . . . though at least two circuits have concluded that a *Brady* violation is cognizable following a guilty plea, the Seventh Circuit has recently declined to rule on the issue.") (internal citations omitted); *United States v. Nash*, 29 F.3d 1195, 1202 n.5 (7th Cir. 1994) ("We note. . . that at least two other Circuits have stated that, where a defendant later challenges a guilty plea, *Brady* may be invoked to challenge the voluntariness of the plea where a defendant's (otherwise voluntary) plea was given without knowledge of the undisclosed exculpatory evidence. Defendants, however, did not raise or argue this point in the district court or on appeal. We therefore refrain from addressing it ourselves.") (citations omitted).

In other words, the Seventh Circuit has suggested that if the government possesses evidence of one's factual innocence and fails to turn it over, this could constitute a cognizable *Brady* violation in the plea context. Hampton's petition, however, is governed by AEDPA. Hampton is only entitled to relief if the Wisconsin Court of Appeals' decision on the merits of his claim was contrary to, or involved an unreasonable application of, *clearly established* Federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1)

(emphasis added). As the Seventh Circuit has acknowledged, the Supreme Court has not clearly stated whether a criminal defendant's guilty plea is "voluntary" when the government possesses evidence that would exonerate the defendant of any criminal wrongdoing but fails to disclose it before the entry of the plea. *See McCann*, 337 F.3d at 787. Even assuming, however, the Supreme Court had spoke on this issue, Hampton has not shown that the State possessed evidence of his factual innocence that it failed to turn over. The State does not deny that the police report of Hawkins' interview was not given to Hampton until after the plea hearing. (Docket # 11-4 at ¶ 13.) Even so, the police report, in which Hawkins stated that Hampton was not involved in the packaging process of the heroin (Docket # 1-1 at 10), does not show that Hampton was factually innocent of the charges he pled to: manufacture or delivery of cocaine, possession with intent to deliver heroin, and being a felon in possession of a firearm. Even if he did not bag the heroin, that does not mean that he was not otherwise involved in the distribution process. Thus, the police report does not establish Hampton's factual innocence to trigger *Brady* protections.

Hampton further argues that his *Brady* rights were violated because he not only never received the police report, but he failed to receive the video recording of the interview. While the respondent argues that "there is no evidence that a video exists," (Resp. Br. at 12, Docket # 14), the report clearly states that the officer "re-entered the room and activated the video recording device" and informed Hawkins that "the interview was going to be video recorded" (Docket # 1-1 at 9). Hampton also includes an affidavit from Hawkins dated May 10, 2018, which Hampton states affirms what Hawkins said on the video, specifically that Hawkins was "recorded on video stating that Hampton had nothing to do with the heroin and took full ownership of it." (Petitioner's Reply Br. at 2, Docket # 19.) Hawkins' affidavit,

7

however, also does not establish Hampton's factual innocence. In the affidavit, Hawkins avers that he has taken "full responsibility and ownership of the 25 grams of heroin" found on the premises and that Hampton was "not the owner of the 25 grams of heroin." (Docket # 1-1 at 2.) Again, this does not show Hampton was factually innocent of possession with intent to deliver heroin—one can be guilty of possession of a controlled substance without having physical possession of the substance. *See Ritacca v. Kenosha Cty. Court*, 91 Wis. 2d 72, 82, 280 N.W.2d 751, 756 (1979) ("To be found guilty of possessing a controlled substance, physical possession is not necessary."). While Hawkins avers that Hampton was not the "owner" of the heroin, he does not say that Hampton "had nothing to do with the heroin," i.e., that he was not involved in the heroin distribution. Thus, because Hawkins' statement does not exonerate Hampton, Hampton does not have a cognizable *Brady* violation and thus cannot obtain habeas relief on this ground.

Even assuming, however, that Hampton could show a constitutional violation, he has not shown that the court of appeals' decision was contrary to, or an unreasonable application of, *Brady*. Hampton does not contend that the court of appeals applied the incorrect governing legal rule. Indeed, the court of appeals properly cited the standard for a violation under *Brady*:

> To establish what is commonly known as a *Brady* violation, the evidence: (1) must be favorable to the accused as either exculpatory or impeaching; (2) must have been suppressed by the State, either willfully or inadvertently; and (3) must be material, in that prejudice ensued from its suppression. Evidence is material "only if there is a reasonable possibility that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. However, the mere possibility that undisclosed information might have helped the defense does not establish materiality in the constitutional sense.

(Docket # 11-4 at ¶ 12); *see Goudy v. Cummings*, 922 F.3d 834, 838, 842 (7th Cir. 2019) (articulating *Brady* standard consistent with the Wisconsin Court of Appeals' articulation). As such, because the court of appeals identified the correct governing legal rule, the only issue before me to resolve on habeas review is whether the state court unreasonably applied that rule to the facts of Hampton's case or unreasonably determined the facts in light of the evidence presented. In making that determination, it is important to recall that in a federal habeas corpus proceeding, the court's review is tempered by AEDPA's deferential constraints.

Again, the Wisconsin Court of Appeals acknowledged that the State failed to turn over the police report of Hawkins' interview. (Docket # 11-4 at ¶ 13.) The court of appeals concluded, however, that Hawkins' statement was neither exculpatory nor material; thus, there was no *Brady* violation. (*Id.*) The court of appeals found that Hawkins' statement that Hampton was not involved in the process of packaging heroin for re-sale was not exculpatory because Hawkins "did not say Hampton 'wasn't involved in the dealing of it' and did not say 'he wasn't involved at the house where it was sold out of.' He merely said Hampton 'wasn't involved in the packaging process.' This statement does not exculpate Hampton from the heroin charge." (*Id.* at ¶ 14.) The court of appeals further found that the statement was not material because "it was not credible that 'this little sentence in a report' would have prompted Hampton to reject a plea agreement that reduced his maximum possible sentence exposure from 'over 100 years' to 45 years." (*Id.* ¶ 16.)

Hampton argues that the court of appeals misapplied *Brady* because Hawkins essentially exonerated Hampton in the video by saying that Hampton had "nothing to do with the heroin," as confirmed by his 2018 affidavit. (Petitioner's Reply Br. at 2.) But again,

9

Hawkins did not exonerate Hampton in his affidavit. Rather, he stated that Hampton did not "own" the heroin found on the premises and that he was taking full responsibility for it. (Docket # 1-1 at 2.) To be fair, the court of appeals likely never saw Hawkins' affidavit. The affidavit is dated less than two months before the court of appeals issued its decision and it appears it was filed in Hawkins' criminal case, Douglas County Case No. 2012-CF-160. (Docket # 1-1 at 2.) Even so, the subsequent affidavit does not alter the court of appeals' reasoning. Hawkins does not state that Hampton was not involved in dealing heroin, only that he was taking responsibility for it and that he owned it. Again, Hampton can still legally "possess" with intent to distribute a substance that he does not "own." For these reasons, Hampton has not shown that he is entitled to habeas relief on this ground.

    2.    *Alleged Excessive Sentence*

Hampton also argues that the trial court's sentence was "abundantly excessive" and constitutes "an abuse of discretion." (Petitioner's Br. at 9, Docket # 13.) Although the trial court sentenced Hampton over and above the parties' joint recommendation, as the court of appeals noted, Hampton does not dispute that the sentence is within the statutory limits. (Docket # 11-4 at ¶ 22.) The court of appeals found that the trial court informed Hampton during the plea colloquy that he was not bound by the joint recommendation of the parties and could sentence him higher or lower than the joint recommendation and fully explained his rationale during sentencing for departing from the joint recommendation. (*Id.* at ¶¶ 5, 24.)

A federal court will not normally review a state sentencing determination which, as here, falls within the statutory limit. *Gleason v. Welborn*, 42 F.3d 1107, 1112 (7th Cir. 1994). Further, a criminal sentence can be attacked in a habeas corpus proceeding only if the

sentencing court lacked jurisdiction to impose it or committed a constitutional error that made the sentence or underlying conviction fundamentally unfair. *Bean v. United States*, 679 F.2d 683, 685 (7th Cir. 1982). Hampton has not shown that the sentencing court lacked jurisdiction to impose this term or committed a constitutional error making the sentence fundamentally unfair. Thus, Hampton is not entitled to habeas relief on this ground.

Finding that Hampton is not entitled to habeas relief on any of the grounds raised in his petition, Hampton's petition for a writ of habeas corpus is denied and this case is dismissed.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

Jurists of reason would not find it debatable that Hampton is not entitled to habeas relief. Thus, I will deny Hampton a certificate of appealability. Of course, Hampton retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 16th day of December, 2020.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge